IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LISA O. MACKOUL,

      Appellant,

v.

CAROL MACKOUL, Personal
Representative of the ESTATE
OF VICTOR P. MACKOUL,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3631

_____/

Opinion filed August 28, 2017.

An appeal from the Circuit Court for Duval County.
John Guy, Judge.

Suzanne C. Quinonez of the Law Office of Suzanne C. Quinonez, P.A., Middleburg,
for Appellant.

Michael L. Edwards, Jacksonville, for Appellee.

PER CURIAM.

      Lisa O. Mackoul challenges the trial court's order dissolving a lien imposed

on real property belonging to her now-deceased ex-husband, Victor P. Mackoul, to

secure an award of alimony. Because the lien was intended to serve as security for

an ongoing stream of payments to Ms. Mackoul to minimize future economic harm to the surviving family, we reverse and remand for further proceedings.

## I.

The Mackouls divorced in 2009. At that time, Mr. Mackoul was seventy-five years old and Ms. Mackoul was forty-six. The amended final judgment of dissolution awarded permanent periodic alimony of $1,000 to Ms. Mackoul, to be paid on the first day of each month "until the death of either party or remarriage of the Wife, whichever shall first occur, at which time alimony" would cease. To secure the award of child support and alimony, the judgment imposed liens on certain pre-marital real property of Mr. Mackoul.

Mr. Mackoul appealed the amended final judgment of dissolution, challenging the impositions of the liens. *See Mackoul v. Mackoul*, 32 So. 3d 741, 742 (Fla. 1st DCA 2010). This Court determined that the record supported the requirement for such security to the extent necessary to protect the payment of alimony or child support. We explained as follows:

> The Former Husband is 77 years old and in poor health. The Former Husband is uninsurable but has significant unencumbered assets that he uses to support himself. The Former Wife would potentially be left in dire financial straits after the Former Husband's death because she is not capable of full-time employment. The Former Wife has significant medical history resulting in some medical disability, and both parties agreed that the Former Wife needs to be home on afternoons and weekends to care for their youngest child, who has been diagnosed with a form of autism and cannot be left alone. The child also may remain [dependent] even after he reaches majority.

2

*Mackoul,* 32 So. 3d at 743. However, we were unable to determine whether the amount of the security was appropriately tailored to the obligation being secured because the trial court failed to specify "whether, in the context of alimony, the lien only secures arrearages at the time of the Former Husband's death or if it was also intended to secure future payments in order to minimize future economic harm to the family." *Id.* Accordingly, we reversed that portion of the judgment and remanded for additional findings.

On remand, the trial court held a hearing on the issue and entered an order clarifying the requirement of the security for alimony and child support (the "Clarifying Judgment"). The court found that it was "appropriate that the Final Judgment create[d] a lien on said real property, in favor of the Former Wife and the parties' minor children, to secure the award of child support and alimony." The court noted Mr. Mackoul's poor health and Ms. Mackoul's thirty-four-year life expectancy. The Clarifying Judgment states that it was the court's intention to "secure not only arrearages at the time of the Former Husband's death, but also to secure future payments to the Former Wife and minor children in order to minimize future economic harm to the family" based on its findings "that the Former Wife and the parties' minor children [would] be left in dire strai[ts] if adequate security [were] not required." The court found, in pertinent part, that "the Former Wife requires the security in the amount of $250,000 . . . to secure the Former Wife's alimony award

without incurring any additional expense and . . . that $150,000 is the appropriate amount to secure the future payments of child support and provide for the minor children's needs." The Clarifying Judgment was not appealed.

Approximately six years later, Mr. Mackoul passed away and his estate moved to dissolve the lien to secure alimony. Ms. Mackoul countered with a motion to dismiss. Following a hearing, the court issued an order granting the motion to dissolve the lien regarding alimony and denying Ms. Mackoul's motion to dismiss. In pertinent part, the court found that (1) the Amended Final Judgment of Dissolution provides that alimony shall terminate on the death of either party or re-marriage of Ms. Mackoul, and (2) although the Clarifying Judgment clearly states that $150,000 is the appropriate amount to secure the future payments of child support, it does not state whether the $250,000 security for alimony is for future alimony or to ensure the financial well-being of the family. The court concluded that as a result of the terminology in the Clarifying Judgment, it appeared that only the lien for child support was to secure future payments, and the security for alimony was not for future alimony or to ensure the well-being of the family.

II.

The instant appeal centers on the interpretation of the Clarifying Judgment. Ms. Mackoul argues that the trial court erred by dissolving the lien securing alimony because the court created the security so Ms. Mackoul and the family would not find

4

themselves destitute after Mr. Mackoul died. Mr. Mackoul's estate argues that the court correctly interpreted the Clarifying Judgment because the judgment does not specify that the purpose of the lien is for future alimony or to ensure the well-being of the family. We review a trial court's interpretation of a final judgment de novo. *McFatter v. McFatter*, 193 So. 3d 1100, 1103 (Fla. 1st DCA 2016).[1]

Although the Clarifying Judgment is not a model of clarity,[2] when read in context and in conjunction with this Court's directions in *Mackoul*, we conclude that the Clarifying Judgment established a lien to secure both alimony arrearages and a stream of future payments to ensure the well-being of the surviving family. Specifically, the Clarifying Judgment's discussion of Mr. Mackoul's poor health, Ms. Mackoul's life expectancy, and the trial court's expressed intention "to secure not only arrearages at the time of the Former Husband's death, but also to secure future payments to the Former Wife and minor children in order to minimize future

---

[1] The only issue we decide is whether the court correctly interpreted the earlier Clarifying Judgment. No party has challenged the trial court's authority to require security for alimony, and we are not asked to decide whether the trial court was correct to do so—only whether it did. *Cf.* § 61.08, Fla. Stat. ("To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose."); *cf. also Sobelman v. Sobelman*, 541 So. 2d 1153, 1154 (Fla. 1989) (rejecting argument that phrase "to protect an award of alimony" is limited to protecting arrearages).

[2] We note that the judge who was tasked with interpreting the Clarifying Judgment is not the judge who issued the Clarifying Judgment.

economic harm to the family" support this conclusion. Additionally, it is hard to imagine that the Clarifying Judgment would have imposed a lien in the amount of $250,000 in light of Mr. Mackoul's advanced age and declining health if the security were merely to safeguard against potential arrearages. Also, in the context of determining the amount of the lien, the Clarifying Judgment found that Ms. Mackoul's life expectancy was thirty-four more years. If the lien were not intended to provide future protection to the family, Ms. Mackoul's life expectancy would be irrelevant. In *Mackoul*, we remanded for the trial court to make specific findings "concerning whether, in the context of alimony," the lien was meant to "secure future payments in order to minimize future economic harm to the family." 32 So. 3d at 743. The Clarifying Judgment tracked this language in making its findings regarding the lien for alimony and for child support.

For the foregoing reasons, we reverse the order dissolving the lien to secure alimony and remand for further proceedings consistent with this opinion.

RAY and WINSOR, JJ., CONCUR; MAKAR, J., CONCURS WITH OPINION.

6

MAKAR, J., concurring.

I concur, but point out that the time to contest whether the lien on the property of the former husband (who is now deceased) had been sufficiently clarified was on remand from *Mackoul v. Mackoul*, 32 So. 3d 741, 742 (Fla. 1st DCA 2010) (*Mackoul I*), after Circuit Judge Jean M. Johnson (also now deceased) on November 8, 2010, issued a "Final Judgment Clarifying Requirement of Security for Alimony and Child Support." At that point, the former husband had the opportunity to seek rehearing before Judge Johnson if he deemed her clarifying judgment as non-compliant with the mandate in *Mackoul I* or, if she denied relief, to seek compliance with the mandate by seeking relief in this Court. Perhaps reasons existed for letting the muddled clarification order lie until after the former husband died in February 2016, and to then seek relief from the lien, but they are not apparent in the record on appeal. The successor judge's interpretation of the situation is understandable given the ambiguous state of the court file: the final judgment says alimony ceases upon either party's death; the original trial judge put a lien on the former husband's property "to secure the award of child support and alimony" but didn't specify whether it was to secure future payments or to minimize "future economic harm to the family"; and her order on remand didn't conclusively clear up the matter. Divining what the deceased predecessor judge intended requires a degree of oracular powers the judiciary lacks, but on balance the overall purpose of the lien—as reflected in

7

*Mackoul I* and the original judge's rulings favoring the former wife and the minor child's needs—suggests the conclusion we reach today, which is that it secures alimony arrearages as well as future payments for the family's well-being.